**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **VS.** | : | **CRIMINAL NO. 22-118** |
| | : | |
| **MAHMOUD ALI AHMED RASHWAN** | : | |

## ORDER

AND NOW, this      day of      , 2022, upon consideration of the Defendant's Amended Motion to Dismiss Counts Two and Three of the Indictment, and the government's response thereto, the motion is hereby **GRANTED**.   It is hereby **ORDERED** that Counts Two and Three of the Indictment against the Defendant are **DISMISSED**.

BY THE COURT:

_____
The Honorable Jeffrey Schmehl
United States District Court

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| VS. | : | CRIMINAL NO. 22-118 |
| | : | |
| MAHMOUD ALI AHMED RASHWAN | : | |


**AMENDED MOTION TO DISMISS COUNTS TWO AND THREE OF THE**
**INDICTMENT**


   Defendant, Mahmoud Ali Ahmed Rashwan, by and through his attorney, CARINA LAGUZZI, ESQUIRE, pursuant to Federal Rules of Criminal Procedure 7(c) and 12(b), respectfully moves for an Order dismissing Counts Two and Three of the government's indictment.  In support of this Motion, Mr. Rashwan relief upon, and incorporates by reference, the accompanying Memorandum of Law.

        Respectfully submitted,


        */s/ Carina Laguzzi*
        CARINA LAGUZZI, ESQUIRE
        Attorney for Defendant


DATED: 05/27/2022

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **VS.** | : | **CRIMINAL NO. 22-118** |
| | : | |
| **MAHMOUD ALI AHMED RASHWAN** | : | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S AMENDED[1]**</u>
<u>**MOTION TO DISMISS COUNTS TWO AND THREE OF THE INDICTMENT**</u>

Mahmoud Ali Ahmed Rashwan is charged with making false statement to a federal firearms licensee, in violation of 18 U.S.C. § 924(a)(1)(A) [Count One]; possession of a firearm by an alien illegally or unlawfully in the United States, in violation of 18 U.S.C. § 922(g)(5)(A) [Count Two]; and possession of a firearm by an alien admitted to the United States under a nonimmigrant visa, in violation of 18 U.S.C. § 922(g)(5)(B) [Count Three].  In support of the charges, the government relies primarily on an ATF Form 4473 and Mr. Rashwan's immigration documents.  The government's case appears to be Mr. Rashwan purposely filled out with some incorrect information for a permit to purchase firearms for a nefarious purpose.  For the reasons that follow, the government cannot sustain a conviction against Mr. Rashwan as to Counts Two and Three of the indictment; therefore, those charges must be dismissed.

---

[1] Defendant Rashwan filed a Motion to Dismiss Counts Tw and Three of the Indictment on May 26, 2022. This amended motion is for the purpose of adding exhibits, specifically, Exhibit A1- the I-539 Receipt Notice, Exhibit B1- the cover page to Mr. Rashwan's asylum application, Exhibit D1 regarding Rashwan's employment; and Exhibit E- Rashwan's hunting permit.  Also, there is an added paragraph in subsection 2 on Pages 8-9 of this Memorandum of Law regarding Mr. Rashwan's hunting permit.  Finally, there is the addition of a footnote regarding Mr. Rashwan's employment on Page 4.

I.     **STATUTORY FRAMEWORK**

The former Federal Rule of Criminal Procedure 12(b)(3) stated a party must make the following motions before trial: a motion alleging defect in instituting the prosecution, a motion alleging defect in the indictment or information, a motion to suppress, a Rule 14 motion to sever charges or defendants, and a Rule 16 motion for discovery. Fed. R. Crim. P. 12(b)(3) (amended December 1, 2014).  Motions alleging defect in the indictment or information could be made at any time while the case was pending in order to invoke the court's jurisdiction or state an offense. Id.   The Advisory Committee's amendment to Rule 12(b)(3), now clarifies the five categories of motions set out in the former rule 12(b)(3), must be raised before trial if the issue can be decided without a trial "on the merits" and if the basis for the motion is readily available.  Id.  Defects in the indictment or information includes joining two or more offenses in the same count, charging the same offense in more than one count, lack of specificity, improper joinder, and failure to state an offense.  Id.  Additionally, the lists of motions under "a defect in instituting the prosecution" and "errors in indictment or information" are not meant to be exclusive; neither are they meant to supersede statutes that implement a time to make specific motions.  Id.  Rule 12(b)(3)(B) has also been amended to prohibit a court from hearing claims about errors in the indictment or information at any time while the case is pending, unless the claim is that the defect fails to invoke the court's jurisdiction or state an offense. Id.

II.    **DISCUSSION**

> **A.  The government cannot sustain a conviction on Count Two since Mr. Rashwan was neither illegally, nor unlawfully, in the United States at the time of the allegations**

Count Two alleges that on or about March 12, 2022, in New Tripoli, Mr. Rashwan "knowing he was an alien illegally and unlawfully in the United States, knowingly possessed… a firearm…in violation of 18, United States Code, Section 922(g)(5)(A)."[2]   The central issues the government must prove under this Count are (1) Mr. Rashwan was illegally, or unlawfully, in the United States at the time of his possession of the firearm; and (2) knew of his illegal status on March 12, 2022.   The history of Mr. Rashwan's immigration status in the United States confirms that on the date of the alleged crime, Mr. Rashwan was neither illegally, nor unlawfully, present in this country.   Therefore, any actual possession of a firearm was not illegal.

On February 4, 2018, Mr. Rashwan was admitted to the United States pursuant to a B-2 visitor visa, which allowed him to lawfully remain in the United States until August 3, 2018.   See Form I-94 attached as Exhibit A.   Prior to the expiration of his lawful status, Mr. Rashwan timely filed for an extension of his visitor visa; specifically, Mr. Rashwan filed a Form I-539, Application to Extend/Change Nonimmigrant Status, on July 19, 2018.   See Exhibit A1.   On August 27, 2018, Mr. Rashwan applied for asylum due to a fear of return to his native country of Egypt. See Exhibits B and B1.   The plain language of the U.S. Code mandates that while the Form I-539 was pending, Mr. Rashwan did not

---

[2] The provisions set forth at 18 U.S.C. § 922(g)(5)(A), state, in pertinent part:

> (g) It shall be unlawful for any person—
> ...
> (5) who, being an alien—
> ...
>     (A)  Is illegally or unlawfully in the United States;
> ...

to ... possess in or affecting commerce, any firearm or ammunition. ...

accrue unlawful status in the United States. 8 U.S.C. § 1182(a)(9)(B)(iv).[3]  Additionally, and critically, Mr. Rashwan's request to extend his lawful nonimmigrant presence in the United States was approved retroactively.  See Exhibit A1.  Accordingly, there was never a day in which Mr. Rashwan was unlawfully present in the United States from the date of his arrival in the country, to the date for which he applied for asylum.  Id.

Therefore, the assertion in Count Two that Mr. Rashwan was "illegally and unlawfully" present in the United States on March 12, 2022, is false as he was in active asylum proceedings.[4]  As an individual seeking asylum protection, Mr. Rashwan was afforded certain legal rights which are not given to those illegally or unlawfully present in the country.  For instance, Mr. Rashwan, as someone seeking asylum protection, was given the legal right to work in the United States – a right Mr. Rashwan sought and benefited from when he applied for and received the legal right to work in this country.  See Exhibits D and D1.[5]  Accordingly, as an asylum seeker, he is lawfully and legally in

---

[3] On August 23, 2018, Mr. Rashwan completed a Form I-589, Application for Asylum and Withholding of Removal, which was stamped as received by the Department of Homeland Security, U.S. Citizenship and Immigration Services ("USCIS"), on August 27, 2018.  On October 22, 2018, Rashwan was interviewed by an Asylum Officer; and on October 30, 2018, the Asylum Officer referred Rashwan's Application for Asylum and Withholding of Removal to an Immigration Judge.  Later, after Mr. Rashwan applied for asylum protection, on November 2, 2018, USCIS issued a Form I-862, Notice to Appear, the charging document utilized in immigration proceedings.  The allegations in the Notice to Appear are that Mr. Rashwan (1) was not a citizen or national of the United States; (2) was a native of Egypt and a citizen of Egypt; (3) was admitted to the United States at Charlotte, NC on or about February 4, 2018, as a nonimmigrant B-2 with authorization to remain in the United States for a temporary period not to exceed August 3, 2018; and (4) remained in the United States beyond August 3, 2018, without authorization from the Immigration and Naturalization Service or its successor the Department of Homeland Security.  These allegations have not been proven in court.  There is no scheduled date in immigration court.

[4] Asylum is a protection granted by the United States to protect individuals who fear return to their native country pm a protected ground.  See 8 U.S.C. § 1158.

[5] The employment authorization was granted on July 17, 2019, and Mr. Rashwan began work on August 29, 2019.

the United States and cannot be charged under 922(g)(5)A).  United States v. Orellana, 405 F.3d 360 (5ᵗʰ Cir. 2005).[6]

Furthermore, and perhaps just as importantly, the government bears the burden of proving Mr. Rashwan knew he belonged to a relevant category of persons barred from possessing a firearm under federal law.  Rehaif v. United States, 139 S.Ct. 2191, 2200 (2019).[7]  The government cannot prove this.  There is nothing alleged in the indictment which suggests Mr. Rashwan was unlawfully present in this country, let alone he had knowledge of any such alleged unlawful status.

The government makes an ill attempt to show Mr. Rashwan knew he was illegally in the United States as a visa overstay.  As an asylum seeker, he is not in the United States unlawfully or illegally.[8]  This timeline clearly indicates Mr. Rashwan was never illegally or unlawfully in the United States at the time of his possession of the firearm on March 12, 2022.  Therefore, no crime was committed under this section; without any support in

---

[6] Defendant Jose Narciso Orellana appeals the district court's final judgment of conviction sentencing him to eighteen months' imprisonment. Orellana was indicted under 18 U.S.C. § 922(g)(5)(A) for possessing a firearm while being an alien "illegally or unlawfully in the United States." Before trial, Orellana sought dismissal of his indictment on grounds that he was legally present on account of his temporary protected status. The district court denied this request, and Orellana was subsequently convicted at a bench trial. The Fifth Circuit found it was uncertain whether Congress intended to criminalize the possession of firearms by aliens in receipt of lawful temporary protected status.  Id. at 361.  Thus, it applied the rule of lenity and reverse. Id.

[7] In Rehaif v. United States, 139 S.Ct. 2191, 2200 (2019), the Supreme Court held that "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." Although Rehaif specifically concerned § 922(g)(5), which prohibits an "alien" from possessing a firearm or ammunition, as in this case, the issue here is that Mr. Rashwan was neither unlawfully nor illegally in the United States at the time of his possession, thus no crime has occurred.

[8] Mr. Rashwan's asylum application remains pending as Judge Carle recently entered an order administratively closing Mr. Rashwan's removal proceedings.  This may actually be dismissed as moot as Mr. Rashwan married his fiancée, a United States citizen, on May 19, 2022, and has filed for change of status accordingly.

law, or in fact, the charge at Count Two must be dismissed as the government cannot sustain a conviction under 18 U.S.C. § 922(g)(5)(A).

**B.      The government cannot sustain a conviction under Count Three as Mr. Rashwan was neither illegally not unlawfully present in the United States at the time of the allegations**

Count Three alleges that on or about March 12, 2022, in New Tripoli, the defendant Mr. Rashwan "knowing he was an alien illegally and unlawfully in the United States, knowingly possessed… a firearm…in violation of 18, United States Code, Section 922(g)(5)(B)."

18 U.S.C. § 922(g)(5)(B) sets forth ,in pertinent part:

(g) It shall be unlawful for any person—
...
(5) who, being an alien—
...
> (B) except as provided in subsection (y)(2), has been admitted to the United States under a nonimmigrant visa (as that term is defined in section 101(a)(26) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(26))[9];
> ...
to ... possess in or affecting commerce, any firearm or ammunition....

The statute explicitly cross-references the Immigration and Nationality Act ("INA") to define "nonimmigrant visa," which states that "[t]he term 'nonimmigrant visa' means a

---

[9] Most lawyers and judges who are not immigration specialists would be unable to list, without research, all of the visas that fall under the definition set forth in 8 U.S.C. § 1101(a)(26). United States v. Gear, Crim No. 7-000742 SOM (D. Haw. Sept. 13, 2019). It is even less likely the Government could prove beyond a reasonable doubt that a defendant possessed such knowledge. Id. The Government will rarely have a defendant's statement that he knows the statutory definition of "nonimmigrant visa" or knows that his visa falls under that definition, and it is hard to imagine what other method of proof would be available to the Government. Id. Consequently, an interpretation of § 922(g)(5)(B) requires the Government to prove a defendant knew his or her visa fell within the statutory definition of "nonimmigrant visa" would render it virtually impossible to obtain a conviction under that statute. Id. The Gear court assumed Congress did not enact an unenforceable criminal statute. Id. at 18.

visa properly issued to an alien as an eligible nonimmigrant by a competent officer as provided in this chapter." 8 U.S.C.A. § 1101; INA § 101(a)(26).

1. **At the time of the allegations, Mr. Rashwan was present in the United States pursuant to a protected status as an asylum applicant**

As discussed above, Mr. Rashwan initially entered the United States pursuant to a lawfully issued B-2 visitor visa, which is a nonimmigrant visa.  § 922(g)(5)(B) plainly prohibits firearm possession by B-2 visa holders, subject to limited exceptions clearly spelled out in § 922(y). United States v. Singh, 979 F.3d 697 (9th Cir. 2020).  However, at the time of the alleged possession, Mr. Rashwan's immigration status had changed from B-2 to pending asylum.  Accordingly, Mr. Rashwan did not possess a nonimmigrant visa at the time of the allegation.  Rather, Mr. Rashwan was present in the United States pursuant to a specific, protected status.  The government is therefore unable to sustain the charge at Count Three against Mr. Rashwan and it therefore must be dismissed.

2. **Mr. Rashwan's alleged criminal activity posed no risk of danger to the public or any person**

Section 922(y)(3) creates a broad waiver for visa holders to possess firearms if they have resided in the United States for a continuous period of not less than 180 days, if they receive a statement of support from their embassy or consulate, and the Attorney General confirms that they do not jeopardize the public safety.  18 U.S.C. § 922(y)(3)(B)(i)-(ii), (C)(ii).

Most notably, §922(y)(2)(A) states "…Subsections (d)(5)(B), (g)(5)(B), and (s)(3)(B)(v)(II) do not apply to any alien who has been lawfully admitted to the United

States under a nonimmigrant visa, if that alien is admitted to the United States for lawful hunting or sporting purposes or is in possession of a hunting license or permit lawfully issued in the United States.  Mr. Rashwan is in possession of a hunting permit.  See same attached as Exhibit E.

Clearly, the intent underlying this legislation is for the promotion of public safety.[10]  At the time of the allegations, Mr. Rashwan was using his rifle at a firearms range.  The government cannot show Mr. Rashwan had any nefarious nature nor can it show that Mr. Rashwan was, or is, a threat to the safety of the public.

### 3. The government additionally cannot sustain its burden with regard to the scienter requirement, a necessary element of the alleged offense

In criminal law, the *mens rea* ("knowing") element describes a lower level of scienter than willful.  To establish a willful violation of a statute, the Government must prove the defendant acted with knowledge that his conduct was unlawful.  However, the term "knowingly" does not necessarily have any reference to a culpable state of mind or to knowledge of the law.  The knowledge requisite to knowing violation of a statute is factual knowledge as distinguished from knowledge of the law.  Therefore, unless the text of the statute dictates a different result, the term "knowingly" merely requires proof of knowledge of the facts that constitute the offense.  The Supreme Court in Rehaif clarified the law with respect to the *mens rea* of the status element of illegal firearm

---

[10] Section 922(y)(3) creates a broad waiver for visa holders to possess firearms if they have resided in the United States for a continuous period of not less than 180 days, if they receive a statement of support from their embassy or consulate, and the Attorney General confirms that they do not jeopardize the public safety. 18 U.S.C.. § 922(y)(3)(B)(i)-(ii), (C)(ii).  Id. at 706.  Clearly, the intent is for the public safety.  Mr. Rashwan was using his rifle at a firearms range and had a valid hunting permit.  See Exhibit E.

possession under 18 U.S.C. § 922(g).  Rehaif, supra.  The government cannot establish

the *mens rea* element under <u>Rehaif</u>.  <u>See</u> <u>United States v. Singh</u>, supra.

A defendant, as an alien granted temporary protected status ("TPS"), was deemed

lawfully in this country and thus could not be charged under § 922(g)(5)(A).  <u>United</u>

<u>States v. Orellana</u>, 405 F.3d 360 (5th Cir. 2005).[11]  All case law distinguished by <u>Orellana</u>

is also distinguishable here and cannot be used to rebut the argument Mr. Rashwan

cannot be prosecuted under this statute.[12]  As such, the government cannot sustain a

conviction of Mr. Rashwan under this statute.

---

[11] The defendant, an alien, entered the country illegally and obtained TPS.  He received a security officer card using a false Social Security number and bought a gun for use in his position. Defendant sought dismissal of the indictment, which charged him under § 922(g)(5)(A) for possessing a firearm while being an alien illegally or unlawfully in the United States, on the ground that he was legally present on account of his TPS.  The district court denied the request.  Defendant appealed his conviction and sentence.  The court applied a rule of lenity, given the ambiguity of § 922(g)(5)(A), the questionable interpretation and weight of the regulatory definition of 18 U.S.C.S. § 922(g)(5)(A) promulgated by the Bureau of Alcohol, Tobacco and Firearms, and the absence of binding case law on point.  The court reversed the conviction because it was uncertain whether Congress intended to criminalize the possession of firearms by aliens in receipt of lawful TPS under 8 U.S.C.S. § 1254a.

[12] <u>United States v. Arrieta</u>, 862 F.3d 512 (5th Cir. 2017) (Defendant was not entitled to relief as he did not hold lawful status in the United States.)  See United States v. Flores, 404 F.3d 320 (5th Cir. 2005) (The issue there was whether an alien who had applied for Temporary Protective Status (TPS) pursuant to 8 U.S.C. § 1254a, and had been charged under § 922(g)(5)(A), could be deemed to be "illegally or unlawfully" in the United States given that during the pendency of the application for TPS, the United States was prohibited from deporting the alien, and the TPS applicant was provided with "employment authorization" to continue working in the country. Id. at 322; see also 8 U.S.C. § 1254a(a)(1). Flores had argued that, because he could not permissibly be deported during the TPS application process, it necessarily followed that his presence in the United States was not unlawful. Id. at 323.  The <u>Flores</u> court found his contention meritless, as Flores initially entered into the United States without prior inspection.  <u>Id.</u> at 327.) See <u>United States v. Lucio</u>, 428 F.3d 519 (5th Cir. 2005)(although Mr. Lucio had had filed an application to adjust his immigration status to that of a lawful permanent resident-which tolled the INS's ability to deport him, and provided employment authorization until his application was adjudicated-the pendency of the application did not proscribe Lucio from being charged pursuant to § 922(g)(5)(A),he entered the United States illegally in 1981 and thus he was deemed unlawfully in the United States at the time of the possession.  <u>Id.</u> at 525.)  Other courts have also recognized that where an alien lacks lawful immigration status on the date charged in his indictment, he was not considered to be lawfully within the United States and, therefore, bringing a charge against the alien pursuant to § 922(g)(5)(A) was entirely cognizable. <u>United States v. Atandi</u>, 376 F.3d 1186 (10th Cir. 2004).  Moreover, in <u>United States v. Bazargan</u>, 992 F.2d 844 (8th Cir. 1993), an alien whose student visa expired subsequent to his possessing a firearm, was charged under § 922(g)(5)(A) because the expiration of the student visa rendered him illegally in the United States. See also <u>Serrano v. Holder</u>, No. 1:09-cv-3253-WSD, 2010 U.S. Dist. LEXIS 50583, at *13-14(N.D. Ga. Apr. 28, 2010) (Although section 1254a(f)(4) deems TPS beneficiaries as "being in, and maintaining, lawful status as a nonimmigrant," this is different from the requirement that an alien also be

III.     **CONCLUSION**

Since, taking the facts in the best light to the government, the charges against the Defendant cannot legally sustain a conviction on Counts Two and Three; therefore, Mr. Rashwan requests this Honorable Court grant the Motion to Dismiss Counts 2 and 3 of the Indictment.

/s/ Carina Laguzzi_____
CARINA LAGUZZI, ESQUIRE
Attorney for Defendant

---

"inspected and admitted or paroled" to be allowed an adjustment of status. Indeed, being "inspected and admitted or paroled" involves a different process and is aimed at ensuring that an alien enters the United States legally. See, e.g., Reid v. Immigration and Naturalization Service, 420 U.S. 619, 625, 95 S. Ct. 1164, 43 L. Ed. 2d 501 (1975) ("The net effect, therefore, of a person's entering the country as an admitted alien is that the immigration authorities, in addition to making a closer examination of his right to enter in the first place, require and obtain information and a variety of records that enable them to keep track of the alien after his entry.")

## **CERTIFICATE OF SERVICE**

I, CARINA LAGUZZI, ESQUIRE, certify that on this 27th day of May, 2022, I have served a true and correct copy of the attached Amended Motion to Dismiss Counts Two and Three of the Indictment, via electronic filing and thus made it available for printing and downloading upon the following parties:


Mary Futcher                                   The Honorable Jeffrey Schmehl
Assistant United States Attorney               U.S. Courthouse
615 Chestnut Street, Suite 1250                601 Market Street
Philadelphia, PA 19106                         Allentown, PA




/s/ Carina Laguzzi_____
CARINA LAGUZZI, ESQUIRE
Attorney for Defendant