**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | **CRIMINAL NO. 22-CR-118** |
| **MAHMOUD ALI AHMED RASHWAN** | : | |

## <u>ORDER</u>

AND NOW, this            day of                    , 2022, upon consideration of defendant

Mahmoud Ali Ahmed Rashwan's Motion to Dismiss Counts 2 and 3 of the Indictment, and the

Government's response thereto, it is hereby ORDERED that the Motion is DENIED.


_____

HONORABLE JEFFREY L. SCHMEHL
*United States District Judge*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 22-cr-118** |
| **MAHMOUD ALI AHMED RASHWAN** | : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS 2 AND 3 OF THE INDICTMENT**

The United States of America, by its attorneys, Jacqueline C. Romero, United States Attorney for the Eastern District of Pennsylvania, and Mary A. Futcher, Assistant United States Attorney for the District, respectfully request that the Court deny the defendant's motion to dismiss Counts 2 and 3 of the Indictment returned by the grand jury in the above-captioned case for the reasons set forth below.

**I.     PROCEDURAL BACKGROUND OF THE CASE**

On April 6, 2022, a grand jury sitting in the Eastern District of Pennsylvania returned a three-count indictment charging the defendant with a violation of Title 18, United States Code, with making false statements to a federal firearms licensee, in violation of Section 924(a)(1)(A) (Count 1); possession of a firearm by an alien illegally or unlawfully in the United States, in violation of 18 U.S.C. § 922(g)(5)(A) (Count 2); and possession of a firearm by an alien admitted to the United States under a nonimmigrant visa, in violation of 18 U.S.C. § 922(g)(5)(B) (Count 3).   The indictment also includes a Notice of Forfeiture.

**II.     DEFENDANT'S IMMIGRATION STATUS**

On February 4, 2018, the defendant was admitted to the United States on a B-2 visitor

1

visa that allowed him to remain in the United States from February 4, 2018, until August 3, 2018.   The defendant is a citizen of Egypt and he traveled to the United States on an Egyptian passport that identifies him as an Egyptian national.   His Egyptian passport was issued on July 25, 2016, with an expiration date of July 24, 2023.[1]

A B-2 visitor visa is a nonimmigrant visa that permits an individual to visit the United States for short periods of time for vacation in the United States, to visit various states, cities, and national parks, to visit friends and family, to attend certain sporting events, or to receive medical treatment.[2]

On July 9, 2018, the defendant filed an Application to Extend/Change Nonimmigrant Status ("Form I-539") with the United States Citizenship and Immigration Services ("USCIS"). In the application, the defendant stated that his current Nonimmigrant Status was as a visitor B-2, with an expiration date of August 3, 2018 (Part 1, Items 12.a & b).   The defendant indicated that he was applying for "[a]n extension of stay in my current status" (Part 2, Item 1), and requested that his status be extended until November 4, 2018 (Part 3, Item 1.a.).

The defendant signed the Application to Extend/Change Nonimmigrant Status at the bottom of the form after certifying, under penalty of perjury, that the information contained therein was true and correct.

On August 23, 2018, the defendant completed an Application for Asylum and

---

1 Immigration documents show that on December 3, 2017, the defendant was issued a Type B1/B2 Visa, NIV (Non-Immigrant Visa) #M718345, in Cairo, with an expiration date of November 28, 2022.   This Visa permits the defendant to enter the United States but limits his stay to a period of six-month increments within that time period.
2 The Immigration and Nationality Act, Section 101(a)(15)(B) defines a visitor as "an alien (other than one coming for the purpose of study or of performing skilled or unskilled labor or as a representative of foreign press, radio, film, or other foreign information media coming to engage in such vocation) having a residence in a foreign country which he has no intention of abandoning and who is visiting the United States temporarily for business or temporarily for pleasure."

Withholding of Removal ("USCIS Form I-589") ("Asylum Application"), which was received by the Department of Homeland Security, U.S. Citizenship and Immigration Services, on August 27, 2018.[3]

On September 10, 2018, the defendant received an acknowledgment of receipt pertaining to the Asylum Application, which states that the asylum application was received and is pending as of August 28, 2018, and that the defendant "may remain in the U.S. until your asylum application is decided….[and] if you change your address, send written notification of the change within 10 days to the above address."

On October 22, 2018, the defendant was interviewed by an Asylum Officer, and on October 30, 2018, the Asylum Officer denied his Asylum Application and referred his denial to an Immigration Judge.[4]

On November 2, 2018, USCIS issued a Notice to Appear ("USCIS Form 862") in removal proceedings under section 240 of the Immigration and Nationality Act, also known as the "charging document."   The defendant's address on the Notice to Appear was 2391 Fernor Street, Apt. B-18, Allentown, PA 18103.   The Notice to Appear charged that the defendant had been admitted to the United States, but was removable for the following reasons alleged by the Department of Homeland Security:   (1) he was not a citizen or national of the United States; (2) he was a native of Egypt and a citizen of Egypt; (3) he was admitted to the United States at

---

3  Pursuant to Title 8, United States Code, § 1182(a)(9)(B)(iii)(II), "[n]o period of time in which an alien has a bona fide application for asylum under § 1158 of this title shall be taken into account in determining the period of unlawful presence in the United States… ."   However, the tolling period does not apply if the individual worked without authorization. *Id.*

4  On or about October 23, 2018, the investigation revealed that the defendant began working as a cashier at the A1 Stop, 1452 Pennsylvania Avenue, Allentown, PA.   Several lottery reports from the A1 Stop that cashiers at the A1 Stop prepare were located on his cell phone.   The defendant worked at the A1 Stop after he submitted his Asylum Application, and before he was granted work authorization.

3

Charlotte, NC on or about February 4, 2018, as a nonimmigrant B-2 with authorization to remain in the United States for a temporary period not to exceed August 3, 2018; and (4) he remained in the United States beyond August 3, 2018, without authorization from the Immigration and Naturalization Service or its successor the Department of Homeland Security.   The Notice to Appear states that "[o]n the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law: Section 237(a)(1)(b) of the Immigration and Nationality Act (Act), as amended, in that after admission as a nonimmigrant under Section 101(a)(15) of the Act, you have remained in the United States for a time longer than permitted."   The Notice to Appear requires the defendant to appear before an Immigration Judge, United States Department of Justice, 900 Market Street, Philadelphia, Pennsylvania 19107, on November 28, 2018, at 9:30, to show why he should not be removed from the United States.   On November 5, 2018, the defendant signed a Certificate of Service indicating that he was personally served with the Notice to Appear.   The Removal Hearing date was postponed on November 28, 2018, until April 10, 2019.

Accompanying the Notice to Appear, and dated November 5, 2018, was a Referral Notice informing the defendant that USCIS denied his application for asylum after a finding that his claim was not credible.   The defendant was informed that his Asylum Application was referred to an immigration judge for adjudication in removal proceedings.   The letter said that "this is not a denial of your asylum application," and that the immigration judge would evaluate his asylum claim independently and was not required to rely on or follow the decision made by USCIS. The Referral Notice informed the defendant that because he was in removal proceedings, he

must notify the Immigration Court within five days of any change of address.[5]

The Referral Notice also informed the defendant that he was subject to a 150-day waiting period before he could apply for employment authorization, and an additional 30 days before employment authorization could be approved, for a total of 180 days, and that the time period during which the defendant's asylum application must be pending with USCIS and/or the Executive Office for Immigration Review before an employment authorization document ("EAD") can be granted is called the "180-day asylum EAD clock."   Because less than 150 days had elapsed since the defendant first filed his asylum application, the Referral Notice informed the defendant that he was not eligible to apply for employment authorization until January 24, 2019.   The Referral Notice further informed the defendant that if an immigration judge did not deny his asylum application within the 150-day waiting period, then he was eligible to apply for employment authorization.   Finally, the Referral Notice informed the defendant that as of the date of the notice (November 5, 2018), his asylum application had been pending for 66 days, and that he was eligible to apply for employment authorization on January 24, 2019.

On February 13, 2019, USCIS mailed Notice of Action (Form I-797-A) to the defendant at 2931 Fernor Street, Apt. B18, Allentown, PA 18103, informing him that his application for extension of temporary stay was approved from August 4, 2018, through February 3, 2019.

On April 10, 2019, the Immigration Court issued a Notice of Hearing in Removal Proceedings to the defendant, 2931 Fernor Street, Apt. B18, Allentown, PA 18103, to appear

---

5 On November 5, 2018, the defendant filed a USCIS Form AR-11 changing his physical address from 2931 Fernor Street, Apt. B18, Allentown, Pennsylvania 18013, to 2464 Mountain Lane, Apt H23, Allentown, Pennsylvania 18013.   Leasing records show that the defendant's lease at 2464 Mountain Lane, Apt. H23, began on November 1, 2018, and was scheduled to end on November 30, 2019.   The defendant, however, terminated the lease early and moved from his apartment on August 31, 2019, leaving a forwarding address in Flushing, New York.
.

before the Immigration Court, 900 Market Street, Suite 504, Philadelphia, PA 19107, for a

Master/Individual Hearing on May 24, 2022, at 9:00 a.m.   The Certificate of Service attached to

the Notice indicates that the defendant's attorney was personally served with the Notice on April

10, 2019.

On June 20, 2019, the defendant completed an Application for Employment

Authorization ("USCIS Form I-765").   In Items 5.a.-5.e., the defendant listed his mailing

address as 2464 Mountain Lane, Apt H23, Allentown, Pennsylvania 18013.6   He did not list a

physical address.   In Item 14., he checked the "yes" box that he wanted the SSA to issue him a

social security number.   He indicated in Item 18.a. that his country of citizenship or nationality

was Egypt, and in Item 24., that his immigration status at his last arrival was "B-2 visitor."   In

Item 25., he identified his immigration status or category as "B-2/overstay."

On July 17, 2019, the defendant was issued an Employment Authorization card which

was valid until July 16, 2021.   The Employment Authorization Card states, "NOT VALID FOR

REENTRY TO THE UNITED STATES."   The Employment Authorization Card also states that

"This card is not evidence of U.S. citizenship or permanent residence.   The document is void if

altered and may be revoked by the U.S. government.   The person identified is authorized to

work in the U.S. for the validity of this card."   The employment authorization card was valid

from July 17, 2019, through July 16, 2021.

On February 5, 2021, the defendant completed another Application for Employment

Authorization ("USCIS Form I-765").   In Items 5.a.-5.e, the defendant stated that his U.S.

mailing address was 2457 30th Street, SW, Allentown, Pennsylvania 18108.[7]  He did not list a physical address.   In Item 18.a., he stated that Egypt was his country of citizenship or nationality.   In Item 23., he stated that February 4, 2018, was the date of his last arrival into the United States, in Item 24., he said that his status at his last arrival was "B-2 visitor," and in Item 25., he stated that his current immigration status was "no status."   In the *Applicant Section*, Item 1.1., the defendant checked the box stating that he understands English, and that he has read and understands every question and instruction on the application and his answer to every question.

As of March 12, 2022, the date of the offenses charged in Counts 2 and 3 of the Indictment, the defendant's B-2 visa had expired approximately three years earlier, on February 3, 2019, and the defendant was scheduled to appear before an immigration judge for a removal hearing on May 24, 2022, based on the charges set forth in the Notice to Appear, and for a de novo hearing on his Asylum Application, which the USCIS had previously denied on October 30, 2018.

## III.   FACTUAL BACKGROUND

### A.  Count 1

On February 26, 2022, the defendant completed a Bureau of Alcohol, Tobacco, Firearms and Explosives, Firearms Transaction Record, Form 4473, to complete the purchase of a Ruger, Model AR556, Serial Number 83996627, rifle, caliber 556 ("Ruger"), at a gun show in Allentown, Pennsylvania.   The defendant sought to purchase the firearm from a Federal

---

7. A lease obtained from the apartment management company showed that defendant's brother was the lessee of the apartment at 2457 30th Street, Apt. L-7, Allentown, PA 18103, and that the defendant's brother terminated the lease early and moved out on August 30, 2021.   The defendant's name is not on the lease, and as of August 31, 2019, the defendant had already terminated the lease on his apartment located at 2464 Mountain Lane, Apt H23, Allentown, Pennsylvania 18013, and left a forwarding address with the management company in Flushing, New York.

Firearms Licensee ("FFL") who was selling guns at the gun show.   On the Form 4473, the defendant listed his address as 2457 30th Street, Allentown, PA 18103, Lehigh County; his place of birth as Egypt; and he checked the box stating that the United States of America was his country of citizenship.[8]   He did not identify Egypt as his country of citizenship on the Form 4473 despite being asked on the Form 4473 to identify any other countries of citizenship.   The defendant checked the "no" box to Item 21.k, which asks, "[a]re you an alien illegally or unlawfully in the United States?" and checked the "no" box to Item 21.l.1 which asks, "[a]re you an alien who has been admitted to the United States under a nonimmigrant visa?"   He left blank the "yes" and "no" boxes to Item 2l.1.2, which asks, "[i]f you are such an alien do you fall within any of the exceptions stated in the instructions?   (U.S. citizens/nationals leave 21.1.2 blank)." The defendant certified that his answers were true, correct, and complete, and then signed the Form 4473 on February 26, 2022,   The certification above the signature line informs the signer that a "yes" answer to any question set forth in Items 21.b.-21.k., and that a "yes" answer to Item 21.1.1 prohibits the signer from receiving or possessing a firearm.

The certification also states that making any false oral or written statement or exhibiting any false or misrepresented identification with respect to the transaction is a crime punishable as a felony under Federal law.

The defendant provided a Pennsylvania driver's license with the address 2457 30th Street SW, Apt. L7, Allentown, PA 19103 as identification, with an issue date of June 25, 2021, and an

---

8 As of February 26, 2022, the defendant's brother was not living at 2457 30th Street, Allentown, Pennsylvania, and had moved out of his apartment on August 30, 2021. The defendant's address at the time he completed the Form 4473 was unknown because he never provided USCIS with a change of address form as required by USCIS since he was in removal proceedings. After his arrest, the FBI learned that the defendant was living in the Princeton, New Jersey area.

expiration date of June 14, 2023.   The defendant had terminated the lease at his Allentown apartment and provided a forwarding address in Flushing, New York approximately 22 months before the Pennsylvania Department of Motor Vehicle issued this driver's license.   On February 26, 2022, the defendant had moved from his apartment in Allentown approximately 30 months prior to completing the Form 4473, and the defendant's brother had terminated his lease at 2457 30th Street SW, Apt. L7, Allentown, PA 19103, on August 30, 2021, approximately six months before the defendant completed the Form 4473.   The registration number and expiration date on the defendant's Pennsylvania driver's license are set forth on the Form 4473.

The FFL then submitted the Form 4473 to the Pennsylvania Instant Background Check System ("PICS") .   The response returned by PICS was "pending."   The defendant waited approximately one hour for a further response from PICS authorizing the sale before telling the FFL that he had to leave to pick-up his daughter.   The defendant then provided the FFL with his cell phone number for the FFL to contact him when the FFL heard from PICS.   The FFL noted the defendant's cell phone number on the third page of the Form 4473.   PICS later contacted the FFL and requested the defendant's naturalization number.   Another FFL working with the FFL seller called the defendant to obtain his naturalization number.   The defendant provided the FFL who contacted him with his Alien number, which the FFL seller then noted on the Form 4473. The sale was later cancelled by the FFL who retained the Form 4473 for his records after the FFL suspected that the sale was not going to go through.

### B.    Counts 2 and 3

On March 9, 2022, the United States obtained a search warrant authorizing cell-site location and pen register information for the cell phone used by the defendant.

On March 12, 2022, at approximately 1:00 p.m., a Federal Bureau of Investigation ("FBI"), Allentown Resident Office ("ARO"), Special Agent ("SA") received a text message pursuant to the cell-site location search warrant that the defendant's cell phone was in the vicinity of Pennsylvania State Game Land Number 205 Shooting Range located in New Tripoli, Pennsylvania (New Tripoli State Game Land Shooting Range).   The FBI SA contacted a Special Investigator with the Pennsylvania Game Commission, Bureau of Wildlife Protection, who had recently become an FBI Task Force Officer ("TFO").   The FBI SA asked the TFO to immediately contact the Game Warden on duty at the New Tripoli State Game Land Shooting Range to locate the defendant.   FBI SAs then left the ARO for the New Tripoli State Game Land Shooting Range. It was snowing heavily in the Lehigh Valley area at that time.

The TFO contacted the Game Warden at the New Tripoli State Game Land Shooting Range.   One responsibility of a Game Warden is to ascertain that an individual shooting at the range has a range permit.[9]   The Game Warden stated that he had already encountered the defendant and two other individuals, subsequently identified as the defendant's brothers, on the shooting range and stopped to ask to inquire if the individuals had a range permit.   The Game Warden stated that he saw the defendant shoot in excess of six rounds from his rifle at one time, which was in violation of 58 PA Code, § 135.181(b)(6).[10]

In summary, the defendant told the TFO and the Game Warden that he had a range

---

9. The Pennsylvania Game Commission requires a range permit to shoot at all shooting ranges on Pennsylvania State Game Lands.   The permits can be purchased online and at a variety of locations including a Walmart.
10. 58 Pa. Code § 135.181(b)(6) states:[a]t a rifle and handgun range located on land under Commission ownership, lease or jurisdiction, except when authorized by the appropriate regional director or a designee, it is unlawful to: load or discharge a firearm that contains more than six rounds of single projectile ammunition."   Each offense is a summary offense of the fifth degree, which is penalized at not less than $100 nor more than a $200 fine.   See Title 34, Pa.C.S. § 925.

permit stored on his cell phone and showed them the range permit. The defendant stated that the rifle he was shooting belonged to him, and that he had purchased it from a man he met in an online forum where people from Pennsylvania discuss shooting and firearms.   The TFO and the Game Warden were wearing body cam footage which shows snowy weather, heavy winds, and a deserted shooting range.   The defendant and his two brothers were the only individuals at the shooting range, and they were wearing only light jackets.   The defendant was wearing ear protection gear.   The Game Warden obtained the driver's licenses of both brothers and returned to his vehicle to run the driver's licenses.

When the TFO arrived, the defendant told the TFO that the rifle belonged to him and that he purchased it in Kutztown, Pennsylvania from an individual who lived in Reading, Pennsylvania, that he met at an online forum.   The defendant showed the TFO the range permit, and unsuccessfully attempted to access the online web forum where he met the seller of the rifle. The defendant told the TFO that he lived with his brother at an apartment on Turner Street, Allentown, Pennsylvania.

The TFO obtained the defendant's driver's license and took it to back to his vehicle. The TFO asked the defendant and his brothers if they wanted to wait in their trucks due to the cold weather.   They agreed, and before allowing them into their vehicles, the TFO and Game Warden patted them down. The defendant entered one vehicle, and his brothers entered another vehicle.   The TFO and Game Warden stayed outside of their vehicles.

When the FBI SAs arrived at the New Tripoli State Game Land Shooting Range, the defendant and his brothers were inside the vehicles, and the TFO and Game Warden were standing outside of their vehicles. The TFO had the defendant's rifle in his possession. At that

time, an FBI SA removed the defendant from the vehicle and placed him under arrest.

The rifle possessed by the defendant was identified as a Stag Arms, Model Stag-15, caliber 5.56, bearing serial number 212-915, with a marking stating New Britain, Connecticut, U.S.A. (hereinafter "Stag Arms").

In a post-arrest statement, the defendant stated in summary that he owned the rifle he possessed at the state gun range, and that he purchased it from a private citizen who lived near Reading, Pennsylvania.   The defendant said that he lived in Princeton, New Jersey during the week with a woman that he married in a religious ceremony, and with his brother in an apartment on Turner Street, Allentown, Pennsylvania on weekends, and that he was working as a Systems Engineer in New York City.   The defendant stated that he attempted to purchase a rifle at a gun show in Allentown, Pennsylvania, and that he completed background paperwork.   He also said he was not associated with the address 2457 30th Street, Allentown, Pennsylvania 18103 when he completed the Form 4473, but that it was the address on his license, so he used it.

IV.  **GOVERNMENT'S RESPONSE TO THE DEFENDANT'S MOTION TO DISMISS COUNTS 2 AND 3 OF THE INDICTMENT**

The defendant bases his motion to dismiss Counts 2 and 3 of the Indictment on Federal Rule of Criminal Procedure 12(b)(3)(B)(v), and claims that the government has failed to state an offense in both counts.

The defendant claims that the government cannot sustain a conviction on Count 2 because he was not illegally or unlawfully in the United States at the time of the charged offense, or Count 3 because the asylum application granted the defendant protected status, and that the defendant possessed a hunting license pursuant to 18 U.S.C. § 922(y)(3).   The defendant further claims as

to both Counts that the government cannot prove the knowledge requirement set forth in *Rehaif v.*

*United States*, 139 S.Ct. 2191, 2194 (2019)

    In *United States v. Bergrin*, 650 F.3d 257 (3d. Cirl 2011), the Third Circuit "set forth the

requirements of a well-pleaded indictment and the rules governing a district court's review of a

motion to dismiss."   Id at 264.   The *Bergrin* Court stated:

> Federal Rule of Criminal Procedure 7(c)(1) requires an indictment to "be a plain, concise, and definite written statement of the essential facts constituting the offense charged."   The Supreme Court has explained that "the Federal Rules 'were designed to eliminate technicalities in criminal pleadings and are to be construed to secure simplicity in procedure." … While detailed allegations might well have been required under common-law pleading rules, …they surely are not contemplated by Rule 7(c)(1)." *See United States v. Hartley*, 2022 WL 54558 (M.D. Pa. 2022), citing *United States v. Resendiz-Ponce*, 549 U.S. 102, 110, 127 S.Ct. 782 (2007), quoting *United States v. Debrow*, 346 U.S. 374, 376 (1953).   Likewise, we have held: "[A]n indictment [is] sufficient so long as it "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extend he may plead a former acquittal or conviction in the event of a subsequent prosecution." *United States v. Vitillo*, 490 F.3d 314 (3d Cir. 2007).   In addition, "no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution. *United States v. Rankin*, 870 F.2d 109, 112 (3d Cir. 1989).   *Begrin*, 650 F.3d at 264.
> Regarding a district court's review of a motion to dismiss, *Bergin* stated:

> "[t]o determine whether an indictment "contains the elements of the offense intended to be charged," a district court may look for more than a mere "recit[ation[ in general terms [of] the essential elements of the offense.   *United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002).   A district court must find that "a charging document fails to state an offense if the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation."   *Id.*, see also *United States v. Schiff*, 602 F.3d 152 162-66 (3d Cir. 2020)(indictment alleging "failure to rectify misstatement of others" does not, as a matter of law, state an offense under securities statute that criminalizes omissions of information); *Gov't of the V.I. v. Greenidge*, 600 F2d 437, 438-40 (3d Cir. 1979)(indictment alleging assault on male companion of a rape victim does not, as a matter of law, state an offense under statute that criminalizes assaulting a rape victim).

> A ruling on a motion to dismiss is not, however, "a permissible vehicle for addressing the sufficiency of the government's evidence."   *United States v. DeLaurentis*, 230 F.3d 659,

660-61 (3d Cir. 2000) (citations omitted).  "Evidentiary questions" – such as credibility determinations and the weighing of proof- "should not be determined at th[is] stage." *United States v. Gallagher*, 602 F.2d 1139, 1142 (3d Cir. 1979).  Rather, "[i]n considering a defense motion to dismiss an indictment, the district court [must] accept [] as true the factual allegations set forth in the indictment."  *United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir. 1990)(citing *Boyce Motor Lines v. United States*, 342 U.S. 337 (1952)(citations omitted.

*Bergrin*, 650 F.3d at 264-65.

Here, the indictment includes the statutory language of 18 U.S.C. §§ 922(g)(5)(A)&(B), and the indictment contains "sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution," *Rankin*, 870 F.2d at 112, and the facts giving rise to the charges are identified by the date and the conduct that violated the law.

Count 2, which charges the defendant with a violation of 18 U.S.C. § 922(g)(5)(A), states that the defendant with "knowing he was an alien illegally and unlawfully in the United States, knowingly possessed in and affecting interstate and foreign commerce, a firearm, that is a Stag Arms, model Stag-15, 5.56 mm rifle, bearing serial number 212915, loaded with seventeen live rounds of 5.56 mm ammunition."

Count 3, which charges the defendant with a violation of 18 U.S.C. § 922(g)(5)(B), states that the defendant, "knowing he was an alien admitted to the United States under a non-immigrant visa, knowingly possessed in and affecting interstate and foreign commerce, a firearm, that is a Stag Arms, model Stag-15, 5.56 mm rifle, bearing serial number 212915, loaded with seventeen live rounds of 5.56 mm ammunition."

Federal Rule of Criminal Procedure 7(c)(1) states that, "[t]he indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the

offense charged …" and "[f]or each count, the indictment or information must give the official or customary citation of the statute….the defendant is alleged to have violated."

Counts 2 and 3 charged in the Indictment meet the requirements of F.R.C.P. 7(c)(1).   The Counts include a plain and concise written statement of the essential facts of the offenses charged, notify the defendant of the date and location of the charged offenses, and explain the firearm the government alleges was in the defendant's possession when the defendant allegedly violated the statutes.

The defendant's argument challenges the sufficiency of the government's evidence.   The mechanism for challenging the sufficiency of the government's evidence is a Motion for Judgement of Acquittal pursuant to Federal Rule of Criminal Procedure 29(a) after the close of the government's evidence at trial, and not a motion to dismiss.

**III.     CONCLUSION**

For these reasons, the government respectfully requests the Court to deny the defendant's motion to dismiss Counts 2 and 3 of the Indictment.[11]

Respectfully yours,

JACQUELINE C. ROMERO
United States Attorney

*/s/ Mary A. Futcher*
By:   Mary A. Futcher
Assistant United States Attorney

---

11 The government requests permission to file a supplemental response pending receipt of additional information from the USCIS.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the Government's Response to Defendant's

Motion to Dismiss has been served by electronic filing upon:

Carina Laguzzi, Esquire
www.laguzzilaw.com
cl@laguzzilaw.com


_____/s/ Mary A. Futcher_____
MARY A. FUTCHER
Assistant United States Attorney


Dated:   June 27, 2022