**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL ACTION NO. 22-118 |
| | : | |
| MAHMOUD ALI AHMED RASHWAN | : | |

<u>**MEMORANDUM OPINION**</u>

**SCHMEHL, J.**  */s/ <u>JLS</u>*                                          **November 10, 2022**

Pursuant to a superseding indictment (ECF No. 39), a grand jury has charged Defendant Mahmoud Ali Ahmed Rashwan with two counts of possession of a firearm by an alien illegally or unlawfully in the United States in violation of 8 U.S.C. § 922(g)(5)(A) and one count of making false statements to a federal firearms licensee in violation of 18 U.S.C. § 924(a)(1)(A). Defendant has argued for his release in an August 26, 2022 memorandum accompanying his motion for a pre-trial detention hearing (ECF Nos. 57, 59), a September 15, 2022 appeal of the magistrate judge's detention order (ECF No. 76), and a September 21, 2022 motion (ECF No. 82). On October 27, 2022, the Court heard additional arguments (and received additional briefing thereafter) from the parties on the same issue. For the reasons set forth below, Defendant's requests for release are denied.

## I.    BACKGROUND

In an order docketed on March 23, 2022, U.S. Magistrate Judge Richard A. Lloret determined that Defendant "is a substantial risk of flight because he not a citizen of the United States, has strong family ties outside the United States, and is facing up to a 15-year maximum term of imprisonment if convicted as charged in the criminal complaint." (ECF No. 6 ¶ b.iii.5.) Judge Lloret further found that Defendant's "persistent and ultimately successful effort to obtain

a rifle"—including by "allegedly provid[ing] false information" on a Firearms Transaction Record (Form 4473)—"establishes that the defendant is a danger to the community." (*Id.* ¶¶ b.ii., b.iii.4.) Accordingly, Judge Lloret ordered Defendant's detention pursuant to 18 U.S.C. § 3142(e) and (f)(2). (*Id.* at 3.)

In Defendant's August 26, 2022 memorandum, he sought to reopen his detention hearing on the grounds that body camera footage from Defendant's March 12, 2022 arrest allegedly indicates that Defendant did not pose a danger to anyone while shooting at an outdoor Pennsylvania Game Lands shooting range. (ECF No. 59 at 2.) Defendant also claimed that the footage reveals concerning conduct by various officials on the scene, including that they made discriminatory remarks based on Defendant's race, religion, and nationality. (*Id.* at 2–3.) Finally, Defendant appeared to take issue with the fact that the Court did not reconsider the issue of detention following the return of the superseding indictment (*see* ECF No. 57 ¶ 7), though this matter was not briefed further in Defendant's memorandum.

Defendant further argued for his release in an appeal of Judge Lloret's detention order (ECF No. 76), in which he maintained that detention was improper under the factors found in 18 U.S.C. § 3142(f). Defendant devoted particular focus to, among other issues,[1] section 3142(f)(2)—namely, whether there exists "a serious risk that [Defendant] will flee." (ECF No. 76

---

[1]     Defendant argued that his recent marriage and the consequent possibility of a pathway to legal status warranted a reopening of his pretrial detention hearing. (ECF No. 76 at 17–19.) The Government appears to dispute that the marriage is *bona fide*. (ECF No. 104 at 2.) In any event, although Judge Lloret's order referenced Defendant's potential removability, it clearly did not rely on that fact as a basis to detain Defendant, nor does this Court rely on any potential future detention or removal of Defendant by immigration authorities. Defendant also provided authorities in support of his argument that possession of a firearm should not constitute a "crime of violence" for purposes of holding a pretrial detention hearing (ECF No. 76 at 19–21; ECF No. 83 at 4–5), but neither Judge Lloret nor the Government have relied on the "crime of violence" provisions as a basis for the hearing or as one of the section 3142(g) factors relevant to this case.

at 13–19 (discussing 18 U.S.C. § 3142(f)(2)(A)).)  Arguing that he poses no such "serious risk" of flight, Defendant noted his family and community ties to the U.S. Northeast, his disinclination to return to Egypt given his pending asylum claim,[2] and the possibility of imposing effective conditions of release.  (*Id.* at 16–19.)

Defendant next requested release with conditions on September 21, 2022.  (ECF No. 82.)  In that document, Defendant focused on section 3142(d), which provides for the temporary detention of persons who are not U.S. citizens or lawful permanent residents if they "may flee or pose a danger to any other person or the community."  18 U.S.C. § 3142(d).  In addition to again arguing that he poses no risk of danger or flight, Defendant contended that section 3142(d) "refers to noncitizens [only] in context of being deportable," presumably advancing a theory that as an asylum applicant, Defendant is not a deportable noncitizen, and therefore section 3142(d) does not apply.  (ECF No. 82 at 6.)

Following the October 27, 2022 hearing on the issue of Defendant's release, Defendant submitted, at the Court's request, an undocketed supplemental letter on October 31, 2022, in which Defendant highlighted his consistent attendance of immigration hearings.  He also reiterated his ties to the U.S. Northeast and his disinclination to flee to Egypt.  Defendant further argued that his employment in the IT field indicates that he can be a productive member of society if released with conditions.

The Government, through its briefings on various motions in this case, has emphasized Defendant's multifaceted and persistent efforts to obtain firearms and ammunition.  (*See, e.g.*, ECF No. 67 at 11–14 (detailing Defendant's alleged efforts to acquire firearms by contacting at least 21

---

[2]    The parties have informed the Court that U.S. Citizenship and Immigration Services declined to grant Defendant's application on October 22, 2018, and that the application has been pending before an Immigration Judge for over four years.  (*See* ECF No. 67 at 4; ECF No. 26 at 3.)

users on an online forum).)  Defendant allegedly was ultimately successful in obtaining an assault

rifle and "about 600" rounds of ammunition.  (*Id.* at 13.)  The Government has also claimed that

"Defendant's older brother . . . and the Defendant's wife have approached at least one witness and

asked that witness to lie to the FBI and change his testimony."[3]  (ECF No. 84 at 6; *see also* ECF

No. 104 at 2.)  These same family members have allegedly also been involved in Defendant's

efforts to acquire and use firearms.  (ECF No. 104 at 2.)  Finally, the Government argued that

Defendant's alleged misstatements or omissions on immigration and firearms forms—especially

concerning his address—further underscore that Defendant is a flight risk, is willing to obstruct

justice, and will fail to comply with any conditions of release.  (ECF No. 104 at 1–2; ECF No. 84

at 6.)

## II.  LEGAL STANDARDS

Pursuant to 18 U.S.C. § 3145(b), the Court reviews *de novo* Judge Lloret's detention order.

*See United States* v. *Delker*, 757 F.2d 1390, 1394–95 (3d Cir. 1985).  Section 3142(f) requires a

pretrial detention hearing in a case involving any of the three following circumstances: "any felony

that is not otherwise a crime of violence . . . that involves the possession or use of a firearm"; (2) "a

serious risk that such person will flee"; and (3) "a serious risk that such person will obstruct or

attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or

intimidate, a prospective witness."  18 U.S.C. § 3142(f)(1)(E), (f)(2)(A), (f)(2)(B).  Section

3142(e) requires such pretrial detention if a "judicial officer finds [by clear and convincing

evidence] that no condition or combination of conditions will reasonably assure the appearance of

---

[3]     In Defendant's October 31, 2022 supplemental letter, he took issue with this allegation on
the basis that the Government has not turned over to Defendant any evidence of alleged
interference.  In any event, the Court does not rely on this allegation in reaching its determination.

the person as required and the safety of any other person and the community."   18 U.S.C. § 3142(e), (f).

In assessing the adequacy of potential conditions of release, a court must consider, *inter alia*, the following factors found in section 3142(g): (1) "the nature and circumstances of the offense charged, including whether the offense . . . involves a . . . firearm"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person," such as his "character, . . . family ties, employment, financial resources, length of residence in the community, community ties, past conduct, . . . criminal history, and record concerning appearance at court proceedings"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."   18 U.S.C. § 3142(g)(1)–(4).   After a court makes this assessment, section 3142 permits reopening a pretrial detention hearing if "information exists that was not known to the movant at the time of the hearing" and that information "has a material bearing on the" detention analysis.   18 U.S.C. § 3142(f).

## III.   ANALYSIS

### A.   Defendant's Pretrial Detention Was—and Remains—Justified

Judge Lloret drew appropriate conclusions from the information presented to him at Defendant's pretrial detention hearing, and many of those same circumstances persist today.   From the outset, section 3142(f)(2) required Judge Lloret to hold such a hearing, not to mention the Government's position that section 3142(f)(1)(E) also would have warranted the hearing.   Judge Lloret made findings relating to the factors found in section 3142(g), and the Court finds no basis to disagree with his assessment that "[t]he evidence in this case is strong" concerning Defendant's allegedly repeated (and ultimately successful) attempts to acquire firearms and his alleged misstatements on firearms forms.   (ECF No. 6 ¶¶ b.ii., b.iii.4.)   These efforts, undertaken in the presence of Defendant's family members and while Defendant lacked any final determination on

his immigration status, amount to clear and convincing evidence of Defendant's danger to the community and that conditions on his release would not suffice to ensure community safety.

Judge Lloret further noted that Defendant has incentive to flee due to the length of his potential sentence (a maximum of fifteen years) (*id.* ¶ b.iii.), which remains true today given an estimated guideline range of 51–63 months (*see* ECF No. 104 at 2).  Additionally, although Defendant's asylum application offers some support to his argument that he will not return to his country of origin, the merits of that claim have never been adjudicated in his favor, and Defendant's allegedly repeated failure to provide an accurate address on immigration and firearms forms further suggests a serious risk of flight *within* the United States.  The Court credits Defendant for his apparently consistent attendance of immigration hearings but does not find that it outweighs the foregoing concerns.

## B.    Defendant's Arguments Are Unavailing

Defendant's request to reopen based on new information (ECF No. 59) fails under section 3142(f) because the information was known to Defendant at the time of the initial detention hearing and, in any event, is not material to the detention analysis.  Although Defendant may not have known of the existence of the body camera footage that allegedly reveals, among other things, his safe use of firearms and officials' discriminatory remarks, various witnesses (such as Defendant's companions at the shooting range) could have testified to those circumstances.  *See United States v. Warren*, 2010 WL 1904772, at *3 (W.D. Pa. May 11, 2010) ("Although several other exhibits were created sometime after [the detention hearing], the information contained in those exhibits was known by defendant and could have been presented at the hearing in other formats—other exhibits, testimony, etc.").  Further, even if the Court considered this information, it does not bear on the detention analysis.  Judge Lloret determined that "the defendant's persistent and ultimately successful effort to obtain a rifle," including by allegedly providing false information, "establishes

that the defendant is a danger to the community." (ECF No. 6 ¶ b.iii.4.) Defendant's safe use of firearms at the shooting range does not rebut this finding. Likewise, the officials' allegedly inappropriate conduct is not one of the factors found in section 3142, nor would it outweigh the findings that support Defendant's detention if it were relevant.

To the extent that Defendant seeks release because another hearing was not held following the return of the superseding indictment (ECF No. 57 ¶ 7), that position fails as well. As the Government correctly argued, the return of a superseding indictment does not necessitate a new detention hearing, especially where "[t]he charges against Defendant in the superseding indictment are the same or substantially similar" to those in the initial indictment. *United States v. Irving*, 2022 WL 170042, at *2 (W.D. Pa. Jan. 18, 2022) (collecting cases). Here, both indictments contain two identical counts charging Defendant with making false statements to a federal firearms licensee and possession of a firearm by an alien illegally or unlawfully in the United States. (*Compare* ECF No. 10, Counts 1 and 2, *with* ECF No. 39, Counts 2 and 3.) The superseding indictment dropped a firearms possession charge brought under a provision not applicable to Defendant (ECF No. 10, Count 3) and substituted another firearms possession charge relating to firearms not referenced in the initial indictment. (ECF No. 39, Count 1.) Judge Lloret's analysis applies with equal force even after the return of the superseding indictment (if not more so, considering the additional firearms possession charge).

As mentioned above, Defendant finds somewhat stronger footing in arguing that he does not pose a serious risk of flight to Egypt. (*See* ECF No. 76 at 13–19.) But again, the record evidences that Defendant has a history of failing to update or provide accurate information about his address within the United States. In tandem with Defendant's efforts to acquire firearms, as well as the fact that Defendant would potentially be released to the custody of family members

that participated in Defendant's attempted acquisition and use of firearms, these circumstances suggest that conditions of release will not suffice to ensure community safety.

Defendant has also argued that allegedly lying on firearms forms does not constitute a danger to the community. (ECF No. 83 at 4.) He appears to advance this argument both as to section 3142(f)(1)(A), which authorizes detention in cases involving "a crime of violence," and as to the section 3142(g) factors, which include community safety and whether the offense charged "is a crime of violence." Setting aside the various other reasons to deny Defendant's requests for release, courts have disagreed with Defendant's position. *See, e.g.*, *United States v. Kane*, 2020 WL 1660058, at *4 (W.D. Wash. Apr. 3, 2020) (defendant's "false statements about not having a prior conviction that would prohibit the possession of a firearm . . . support[] a finding of dangerousness"); *cf. United States v. Rocha*, 2019 WL 4384465, at *4 (N.D. Ill. Sept. 11, 2019) (gathering cases—albeit in the context of trafficking firearms—concerning falsified firearms records and the possession of firearms "outside the regulatory framework").

Finally, Defendant's arguments relating to detention pursuant to section 3142(d) are misplaced. (ECF No. 82 at 6.) Judge Lloret ordered detention pursuant to section 3142(e) and (f)(2), not the temporary detention provisions in section 3142(d). Accordingly, the Court need not reach the issues of whether section 3142(d)(1)(B) applies only to deportable noncitizens and whether Defendant's pending asylum application removes him from that category.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's various motions and appeals concerning his release (*see* ECF Nos. 57, 59, 76, 82) are denied.