IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL ACTION NO. 22-118 |
| | : | |
| MAHMOUD ALI AHMED RASHWAN | : | |

## MEMORANDUM OPINION

**SCHMEHL, J.** /s/ **JLS**                                                                                                                           June 29, 2023

Pursuant to the Superseding Indictment in this case (ECF No. 39), a grand jury has charged Defendant Mahmoud Ali Ahmed Rashwan with two counts of possession of a firearm by an alien illegally or unlawfully in the United States in violation of 18 U.S.C. § 922(g)(5)(A) ("Count 1" and "Count 3") and one count of making false statements to a federal firearms licensee in violation of 18 U.S.C. § 924(a)(1)(A) ("Count 2"). On August 4, 2022, Mr. Rashwan filed his *Motion to Dismiss Counts 1 and 2 of Superseding Indictment* (ECF No. 42). He seeks dismissal of Count 1 on the basis that as an asylum claimant whose application was pending at the time of his alleged firearm possession, he was neither "illegally" nor "unlawfully in the United States" (and likewise lacked the requisite knowledge of those statuses). (Def.'s Br. 4–8, ECF No. 42.)[1] The Court should dismiss Count 2 as well, Mr. Rashwan argues, on the basis that his allegedly false statement on a firearms transaction form was at worst ambiguous, not false. (*Id.* at 8–9.)[2]

---

[1] Mr. Rashwan did not expressly move to dismiss the *second* possession charge (Count 3), but the parties' arguments (and the Court's analysis here) apply with equal force to both possession charges (Counts 1 and 3).

[2] After Mr. Rashwan filed the present Motion, he parted ways with his attorney, Mr. Jose Campos. (ECF No. 62.) The Court then appointed Mr. Rashwan's current counsel, attorney Jonathan McDonald. (ECF No. 91.) Mr. McDonald filed *Defendant's Omnibus Pretrial Motion*

In opposing the present Motion, the Government maintains that Mr. Rashwan's presence in the United States was illegal upon the expiration of his visitor visa, and the filing of his asylum application did not alter that status, because Mr. Rashwan accrued "unlawful presence time" by working without authorization. (Gov.'s Br. 18–19, ECF No. 47.) The Government also argues that based on various immigration- and firearms-related documents signed by Mr. Rashwan, he knew that it was unlawful for him to possess those firearms and to represent through those forms that he could lawfully possess them. (*Id.* at 22–26.) For the reasons set forth below, Mr. Rashwan's Motion is denied.

## I.   ALLEGED FACTS

Count 1 charges that "[o]n or about February 14, 2022, at the Heritage Guild of Easton Range, LLC, in Easton," Pennsylvania, Mr. Rashwan "knowingly possessed . . . firearms," including three handguns (a Glock G17, Beretta M9, and Ruger SP101) and a semi-automatic rifle (a Ruger AR-556)—despite that Mr. Rashwan allegedly knew that "he was an alien illegally and unlawfully in the United States" and, therefore, was barred from such possession. (Superseding Indictment 1, ECF No. 39.) Subsequent briefing indicates that Mr. Rashwan had rented these firearms for use at the range. (Gov.'s Br. 3.) Count 3 likewise alleges that "[o]n or about March 12, 2022, in New Tripoli," Mr. Rashwan unlawfully possessed a Stag-15 rifle (Superseding Indictment 5), which Mr. Rashwan had allegedly purchased from a seller that he met on an online forum. (Gov.'s Br. 9.) The Superseding Indictment charges these two incidents as violations of section 922(g)(5)(A).

---

(ECF No. 120), which outlined whether Mr. McDonald was adopting, modifying, or withdrawing Mr. Campos's pending filings. Mr. McDonald adopted the present Motion without modification.

Count 2 charges Mr. Rashwan with allegedly providing false information on a Firearm Transaction Record (ATF Form 4473) in connection with his attempt to purchase a Ruger AR-556 "[o]n or about February 26, 2022, in Allentown," Pennsylvania. (Superseding Indictment 2–4.) Mr. Rashwan allegedly provided incorrect responses (or omitted information altogether) concerning his home address, country of citizenship, government-issued alien number, and immigration status, which the Superseding Indictment charges as a violation of section 924(a)(1)(A). (*Id.* at 4.) Particularly relevant to the instant motion, ATF Form 4473 includes a question concerning citizenship and instructs that an applicant should "Check/List more than one, if applicable. Nationals of the United States may check U.S.A." (Gov.'s Br. 5.) The Government claims that Mr. Rashwan "checked the box stating United States of America (U.S.A.) and left blank the entry for 'Other Country/Countries (Specify).'" (*Id.*) In response to other questions, Mr. Rashwan allegedly declined to supply his government-issued alien number and indicated that he was neither "an alien illegally or unlawfully in the United States" nor "an alien who has been admitted to the United States under a nonimmigrant visa." (*Id.*) Mr. Rashwan then certified to the truth of these answers by signing the form. (*Id.* at 6.)

Subsequent briefing has elicited further alleged facts concerning Mr. Rashwan's immigration status. The parties have explained that Mr. Rashwan, an Egyptian citizen, was admitted to the United States on a B-2 nonimmigrant visitor visa that expired on August 3, 2018. (Def.'s Br. 5.) This expiration date was eventually retroactively extended through February 3, 2019. (Gov.'s Br. 16.) Prior to that extended deadline, on August 27, 2018, Mr. Rashwan applied for asylum, an application that remains pending before an Immigration Court. (Def.'s Br. 5–6.)

## II. LEGAL STANDARDS

Pursuant to Rule 12 of the Federal Rules of Criminal Procedure, a defendant may move to dismiss an indictment on certain grounds. Here, Mr. Rashwan appears to argue that the

Superseding Indictment lacks specificity as to Count 2 and fails to state an offense as to Counts 1 and 3.  Fed. R. Crim. P. 12(b)(3)(B)(iii), (v).  Rule 7 requires that a grand jury indictment consist of "a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  The Third Circuit has held that "an indictment is facially sufficient if it '(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution.'  '[N]o greater specificity than the statutory language is required so long as there is sufficient factual orientation' to permit a defendant to prepare his defense and invoke double jeopardy."  *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012) (citations omitted), *abrogated on other grounds*, *Rehaif v. United States*, 139 S. Ct. 2191 (2019).

An indictment will not survive a motion to dismiss, however, if it "fails to charge an essential element of the crime," as a court should "ensur[e] that legally deficient charges do not go to a jury"—such as where "'the specific facts' that are alleged 'fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation.'"  *Id.* (citations omitted).  At this stage, the Court may not "address[] the sufficiency of the government's evidence" but rather "must accept as true the factual allegations set forth in the indictment" and "determin[e] whether, assuming all of those facts as true, a jury could find that the defendant committed the offense for which he was charged."  *Id.* at 595–96.

### III. ANALYSIS

#### A. The Government Has Sufficiently Alleged in Counts 1 and 3 that Mr. Rashwan Was Knowingly "Illegally or Unlawfully in the United States"

In Counts 1 and 3 of the Superseding Indictment, the Government brings charges against Mr. Rashwan on the basis that it is "unlawful for any person" to "possess" or "receive any firearm

or ammunition" if that person, "being an alien[,] is illegally or unlawfully in the United States." 18 U.S.C. § 922(g)(5)(A). Pursuant to section 924(a)(8) of the same title, "the Government must prove that a defendant knew both that he engaged in the relevant conduct (that he possessed a firearm) and also that he fell within the relevant status (that he was . . . an alien unlawfully in this country . . . )." *Rehaif*, 139 S. Ct. at 2194.[3]

Mr. Rashwan seeks dismissal of Count 1 (and, in effect, Count 3) on two theories. First, he contends that due to the retroactive extension of his visitor visa and his filing of an asylum application prior to the expiration of that extended deadline, Mr. Rashwan was never in the United States "illegally or unlawfully," and accordingly, it was not a violation of section 922(g)(5)(A) for Mr. Rashwan to have allegedly possessed firearms. (Def.'s Br. 5–6.) Second, Mr. Rashwan argues that even if he were "illegally or unlawfully" in the United States, the Government has failed to allege that Mr. Rashwan knew of that status. (*Id.* at 6.) Both arguments fail.

    **1.**    **Mr. Rashwan's Pending Asylum Application Does Not Establish that He Was Not "Illegally or Unlawfully in the United States"**

Although Mr. Rashwan has not yet received a final determination on his asylum application, he points to the fact that even asylum *applicants* are "afforded certain legal rights which are not given to those illegally or unlawfully present in the country," such as the right to temporary work authorization. (Def.'s Br. 6.) In support of distinguishing asylum applicants from persons whose presence is "illegal[] or unlawful[]," Mr. Rashwan points to *United States v. Orellana*, in which the Fifth Circuit held that the presence in the United States of an individual granted temporary protected status ("TPS") was "lawful" or, "[a]t the very least, . . . not

---

[3] When the U.S. Supreme Court decided *Rehaif*, section 924(a)(2) provided the knowledge requirement for violations of section 922(g). Congress subsequently reorganized section 924 such that the relevant provision is now found at section 924(a)(8).

unambiguously . . . unlawful." 405 F.3d 360, 366 (5th Cir. 2005). The Fifth Circuit found that "the purpose of [section 922(g)] is that of keeping firearms out of the hands of those typically considered dangerous or irresponsible," and "Congress evidently believed that . . . aliens [illegally or unlawfully in the United States] came within the class of untrustworthy persons." *Id.* at 366–68. Individuals granted TPS differ from such persons, the Court explained, for the following reasons: they "have purposefully revealed their whereabouts to the government with the intent of receiving legal protection from deportation and authorization to seek employment"; they have not "committed a serious crime" and do not "otherwise represent[] a danger to the people of the United States"; and they receive certain non-temporary privileges, such as "applying for adjustment of status and of traveling abroad with prior consent." *Id.* at 368–70.

Mr. Rashwan's own case law, however, expressly distinguishes *applicants* for immigration relief from individuals *granted* relief. In *Orellana*, the Fifth Circuit noted that in another of its decisions, it "found that an alien's receipt of such temporary benefits as protection from removal and authorization to seek employment did not render him immune to prosecution under section 922(g)(5)(A)," as "[r]eceipt of temporary benefits . . . does not render an otherwise illegal alien's presence lawful." *Id.* at 369–70 (citing *United States v. Flores*, 404 F.3d 320, 326–28 (5th Cir. 2005)). The Court reasoned that "an alien in receipt of TPS is in lawful status, whereas an alien who has merely been extended temporary benefits awaiting the disposition of his application for lawful status may be (and often is) in an unlawful immigration status. We find these differences not without significance . . . ." *Id.* at 370. Since *Orellana*, the Fifth Circuit has continued to subject various types of immigrant applicants to section 922(g)(5)(A), *see United States v. Arrieta*, 862 F.3d 512, 516 (5th Cir. 2017) (gathering cases), as have other courts, *see, e.g.*, *United States v. Ochoa-Colchado*, 521 F.3d 1292, 1295–96 (10th Cir. 2008) (pending application for adjustment of status did not remove the defendant from the scope of section 922(g)(5)(A)); *United States v.*

*Bazargan*, 992 F.2d 844, 847–49 (8th Cir. 1993) (pending asylum application and grant of temporary work authorization did not remove from section 922(g)(5)(A) immigrant who did not comply with terms of student visa).

Here, Mr. Rashwan's pending asylum application does not remove him from these precedents but rather places him firmly within their reasoning. Mr. Rashwan's application grants him access to certain temporary privileges, but his status is not equivalent to that of an individual actually granted asylum. *See United States v. Elrawy*, 448 F.3d 309, 314 (5th Cir. 2006) ("[A]n alien who has acquired unlawful or illegal status ([such as] by overstaying a visa . . . ) cannot relinquish that illegal status until his application for adjustment of status is approved.") And if the Government's allegations are true, Mr. Rashwan has also provided false addresses and repeatedly sought to acquire powerful firearms. This conduct distinguishes Mr. Rashwan from the recipients of TPS in *Orellana*—whom the Fifth Circuit described as "hav[ing] purposefully revealed their whereabouts to the government" and not "otherwise represent[ing] a danger to the people of the United States—and instead suggests that Mr. Rashwan may fall within the "class of untrustworthy persons" for which Congress, according to the *Orellana* court, intended to prohibit the possession of firearms.

Further, adopting Mr. Rashwan's view would produce absurd results. As the Fifth Circuit explained, given that "under § 922(g)(5)(B), an alien *granted* a nonimmigrant visa, with certain exceptions, is not permitted to carry a firearm[,] . . . it would fashion a peculiar result if we were to hold that an alien unlawfully within the United States who has simply submitted an application to adjust his status may permissibly possess a firearm, whereas an alien granted a nonimmigrant visa—and concomitantly, temporary lawful immigration status—may not." *United States v. Lucio*, 428 F.3d 519, 526 n.8 (5th Cir. 2005). Likewise, the Tenth Circuit pointed out that "[a]ccording to Defendant's view, an alien who has applied for adjustment of status would be in the United

States 'legally,' and thus able to possess firearms, only until his application was denied. At that point, the alien would automatically become a felon by virtue of his possession of the firearms, despite the probability of the alien's having little or no prior notice of when the government intends to deny his application." *Ochoa-Colchado*, 521 F.3d at 1297–98. These illogical outcomes underscore the faults in Mr. Rashwan's position.

Finally, in briefing relating to a motion to dismiss that has since been mooted by the Superseding Indictment, Mr. Rashwan attempted to distinguish some of the foregoing unfavorable case law on the basis that Mr. Rashwan entered the United States lawfully through his visitor visa, whereas certain defendants in those cases had not. (*See* Am. Mot. Dismiss 11 n.12, ECF No. 22.) But the relevant issue is the application of section 922(g)(5)(A) to an applicant for immigration relief who, regardless of that application and any protection from deportation it affords, is in the country unlawfully. Whether the applicant previously possessed or lacked lawful status is immaterial, and the Court rejects the position that section 922(g)(5)(A) applies differently to those who overstay a visa and those who enter the United States unlawfully. *See Orellana*, 405 F.3d at 366 n.36 ("[A]n alien who entered the United States on student non-immigrant status and subsequently failed to maintain his status as a student as required by his visa was 'in the same position legally as the alien who wades across the Rio Grande or otherwise enters the United States without permission.'" (quoting *United States v. Igbatayo*, 764 F.2d 1039, 1040 (5th Cir. 1985))).

Accordingly, the Court holds that as a matter of law, Mr. Rashwan is not immune from prosecution under section 922(g)(5)(A) solely because of his pending asylum application or any

benefits flowing therefrom.[4] Mr. Rashwan's request to dismiss Count 1 (and, in effect, Count 3) on this basis must be denied.[5]

### 2. The Government Has Sufficiently Alleged that Mr. Rashwan Knew of His Illegal or Unlawful Status

Mr. Rashwan next contends that the Government has not sufficiently alleged that he "knew . . . that he fell within the relevant status (that he was . . . an alien unlawfully in this country . . . )." *Rehaif*, 139 S. Ct. at 2194.[6] To the contrary, the Superseding Indictment

[4] For this reason, the Court need not address the parties' briefing on whether Mr. Rashwan's allegedly unauthorized employment renders his presence unlawful notwithstanding the pending asylum application. The Government alleges that Mr. Rashwan began working on October 23, 2018, despite that he did not receive temporary work authorization until July 17, 2019. (Gov.'s Br. 14, 17.) The Government argues that under 8 U.S.C. § 1182(a)(9)(B)(iii)(II), which concerns the admissibility of certain aliens, Mr. Rashwan "accrued unlawful presence time between" those dates and thereby rendered his presence unlawful when he allegedly possessed firearms on February 14, 2022 (Count 1) and March 12, 2022 (Count 3). (*Id.* at 19.) That theory raises the dual issues of (1) whether the counting of "unlawful" presence time for purposes of determining admissibility has any bearing on the use of "unlawful" in section 922(g)(5)(A), and (2) if there is a connection between those two provisions, whether the accrual of unlawful presence time in 2018–2019 has any bearing on Mr. Rashwan's status in 2022, when he had temporary work authorization and was therefore no longer accruing unlawful presence time. Because the Court finds that a pending asylum application does not remove Mr. Rashwan from the scope of section 922(g)(5)(A), the Court declines to reach these issues.

[5] Mr. Rashwan also argues that section 922(g)(5)(A) is unconstitutionally vague. (Def.'s Reply 8–9, ECF No. 58.) The Court need not consider this argument given that it was improperly raised for the first time in Mr. Rashwan's reply brief. *See, e.g.*, *DeSimone v. U.S. Claims Servs., Inc.*, 2020 WL 1164794, at *5 n.7 (E.D. Pa. Mar. 11, 2020) ("Generally, it is improper for a party to raise arguments for the first time in a reply brief."). In any event, the Sixth Circuit has held that section 922(g)(5)(A) was sufficiently clear that its scope included a recipient of Deferred Action for Childhood Arrival, which protects eligible immigrants from the initiation of removal proceedings. *United States v. Lopez*, 929 F.3d 783, 785–87 (6th Cir. 2019). Section 922(g)(5)(A) is not so vague as to suggest to Mr. Rashwan—who was merely an *applicant* for immigration relief—that his presence was legal and lawful such that he could possess firearms even though the Government had not yet approved his application.

[6] Defendant does not appear to contest that the Government has sufficiently alleged that he "knew . . . that he engaged in the relevant conduct (that he possessed a firearm)." *Rehaif*, 139 S. Ct. at 2194.

specifically alleges that Mr. Rashwan "kn[ew] he was an alien illegally and unlawfully in the United States." (Superseding Indictment 1, 5.) It also alleges that Mr. Rashwan provided false information (or omitted it altogether) in completing ATF Form 4473 (*id.* at 2–4), from which a jury might conclude circumstantially that Mr. Rashwan knew of his illegal or unlawful status and sought to conceal it in order to acquire firearms. Further, subsequent briefing has alerted Mr. Rashwan that in support of this knowledge element, "the government will show that in two Forms I-756, work authorization applications that the defendant submitted to USCIS in 2019 and 2021, prior to the charged possessions of firearms in 2022, he described his status in the United States as a 'B-2 visa overstay' and as 'no status.'" (Gov.'s Br. 22.) These allegations provide "the statutory language" and "sufficient factual orientation" that "permit a Mr. Rashwan to prepare his defense . . . ." *Huet*, 665 F.3d at 595. Accordingly, the Court rejects this basis for dismissing Counts 1 and 3.

### B. The Government Has Alleged Sufficient Facts to Support Count 2

Count 2 alleges that Mr. Rashwan violated the law by "knowingly mak[ing] any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter or in applying for any license . . . under the provisions of this chapter." 18 U.S.C. § 924(a)(1)(A). Mr. Rashwan charges that the Superseding Indictment is "ambiguous and lacks specificity" because the ATF Form 4473 question that concerns citizenship permits an applicant to check the "U.S.A." box if the applicant is either a citizen *or* national. (Def.'s Br. 8–9.) Mr. Rashwan argues that although the Superseding Indictment cites this question as evidence that Mr. Rashwan falsely claimed to be a U.S. citizen, "no jury would be able to tell whether a defendant, by checking this box, is claiming to be U.S. Citizen or a U.S. Non-Citizen National because of the ambiguity and lack of specificity inherently present." (*Id.* at 9.)

Mr. Rashwan's argument fails because Count 2 alleges that he made false statements on numerous *other* sections of ATF Form 4473. (*See* Superseding Indictment 2–4 (alleging false statements or omissions concerning Mr. Rashwan's address, Egyptian citizenship, alien number, and admission to the United States under a nonimmigrant visa).) Further, regardless of any supposed ambiguity in the form's citizenship question, the Government could still prove that Mr. Rashwan falsely responded to it if the Government proves that Mr. Rashwan is neither a U.S. citizen nor a U.S. national (and knew of those facts). As above, the Superseding Indictment has provided Mr. Rashwan with "sufficient factual orientation . . . to prepare his defense" to the charge that he provided false information for various questions found on ATF Form 4473. *Huet*, 665 F.3d at 595.

IV. **CONCLUSION**

For the foregoing reasons, the Court denies Mr. Rashwan's Motion. A corresponding order accompanies this memorandum.